

OFFICE OF
CHIEF COUNSEL

**DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224**

October 3, 2000

Number: **200102016**
Release Date: 1/12/2001
UILC: 552.02-00
      6103.02-00

CT-505292-99
CC:PA:DPL:B1

INTERNAL REVENUE SERVICE CHIEF COUNSEL ADVICE

MEMORANDUM FOR  MATTHEW MAGNONE
                               DISTRICT COUNSEL, NEWARK CC:NER:NJD:NEW

FROM:                David L. Fish
                     Chief, Branch 1 (Disclosure & Privacy Law) CC:PA:DPL

SUBJECT:       Request for Advice on Money Laundering Notification Letter

This is in response to your memorandum dated December 28, 1999 seeking our assistance as to whether there are any disclosure and/or Privacy Act issues concerning Criminal Investigation (CI)'s proposal to send Money Laundering Notification letters to American businesses which have received narco-laundered proceeds, after the indictment and arrest of the targets in a money laundering operation. This document is not to be cited as precedent.

ISSUES

1. Do the Money Laundering Notification Letters consist of, or contain items of, the targets' or businesses' return information, such that disclosure is governed by I.R.C. § 6103?

2. Do the disclosure restrictions imposed by the Privacy Act of 1974, 5 U.S.C. § 552a, apply to the Money Laundering Notification Letters?

3. Is the retention of the Money Laundering Notification Letters in a database, retrievable by the names of the targets and/or recipients, a system of records? If so, what Privacy Act obligations must be followed?

CONCLUSIONS
1. Yes and no. The Money Laundering Notification Letters do not contain the targets' return information. However, the letters consist, in their entirety, of the recipients' return

information. To the extent that the target's name, amount of laundered payments, and the source of the proceeds that CI proposes to include in the Money Laundering Notification Letters are collected in the course of a pure Title 18 or 31 money laundering investigation which does not relate to the determination of the existence or possible existence of liability or the amount of liability of the target under Title 26, those items of information are not return information subject to the confidentiality rules of I.R.C. § 6103. The letters themselves, however, are compiled by CI with respect to the businesses' possible liability under I.R.C. § 6050I, so that they are the businesses' return information.

2. Probably not. Since the target's name, amount of laundered payments, and the source of the proceeds are items of information drawn from the Criminal Investigation Management Information System (CIMIS) and/or Treasury Enforcement Communication Systems (TECS), the items of information are contained in the target's record which is maintained in an agency system of records. However, since the target's name, amount of laundered payments, and the source of the proceeds are sourced in the public record of the money laundering proceedings, the inclusion of this information in the Money Laundering Notification Letters to the businesses does not constitute a "disclosure" within the meaning of the Privacy Act. So long as the Money Laundering Notification Letter recipients are not individuals or sole proprietors, the letters themselves would not be subject to disclosure restrictions of the Privacy Act.[1]

3. Probably not. So long as the Money Laundering Notification Letters are not maintained in a database in which the letters are indexed by, or cross-referenced to, the names of the targets or sole proprietor recipients, then the database does not constitute a system of records for which Federal Register notice publication is required. If it is determined that the letters will be maintained in a database that is operated with this retrieval/cross-referencing feature, then prior to establishing the database, the IRS must publish notice in the Federal Register of a new, or altered, system of records.

FACTS The Chief, CI, New Jersey District has proposed that after the indictment and arrest of targets in "pure" Title 18 or 31 money laundering operations, any American businesses that received laundered narcotics proceeds from targets would be sent a Money Laundering Notification Letter ("Notification Letter") from CI indicating that the business had received laundered money.[2] Specifically, the Notification Letter would

---

[1] To the extent the letter recipients are sole proprietors, then disclosure of the entirety of the letter, or the fact that the letter was sent to a particular businessman, would be subject to the restrictions on disclosure imposed by 5 U.S.C. § 552a(b).

[2] A "pure" Title 18 or 31 investigation is one where no "related statute" determination has been made, and thus is not a tax administration investigation. In such "pure" Title 18 or 31 cases, returns and return information cannot be accessed by CI unless the

2

identify the laundered payments, the source of those payments, a detailed explanation of how the business can recognize if payments received were the proceeds of narcotics trafficking, and notify the business of deficiencies or errors that may exist in the business' compliance with section 6050I of the Internal Revenue Code.[3]  The purpose of the Notification Letters is twofold: to disrupt the black market peso exchange by deterring legitimate vendors from accepting laundered proceeds, thereby eliminating the market, and to build any future criminal cases against the recipients of the laundered proceeds by monitoring the recipients' compliance with I.R.C. § 6050I.  In this way, the American businesses will be placed on notice of receipt of laundered proceeds in order to prove <u>mens rea</u> in any subsequent asset seizure or criminal action related to their obligation under I.R.C. § 6050I to report any transactions in which a company receives more than $10,000 in cash in the course of a trade or business, to the Internal Revenue Service, including conspiracy charges.  Upon delivery of the Notification Letter, the District would maintain a centralized file of such notices.  CI could then use the file as a foundation for any future civil or criminal action against the American businesses.  For example, CI would be able to submit to a court in such proceedings that branches of businesses in different cities or states have received a Notification Letter, and that those businesses were placed on notice of the existence of the black market peso exchange and its operation, and their obligation under I.R.C. § 6050I.

<u>LAW & ANALYSIS</u>

<u>Inclusion of Information Relating to the Target</u>

I.R.C. § 6103 is not implicated with regard to the information relating to the target that CI proposes to include in the Notification Letter as that information does not meet the definition of return information.  Section 6103(a) prohibits Service employees from disclosing "returns" or "return information" as those terms are defined in I.R.C. § 6103(b)(1) and (b)(2), unless disclosure is authorized under a specific provision of Title 26.  Section 6103(b)(2) defines return information to include, among other things, any data which is received by, recorded by, prepared by, furnished to, or collected by the IRS with respect to a return or with respect to the determination of the existence or possible existence of liability or the amount of liability of any person <u>under Title 26</u>.  Here, it is our understanding that the

---

procedures in section 6103(i) for nontax criminal matters are followed.

[3] I.R.C. § 6050I, Returns Relating to Cash Received in Trade or Business, etc., provides that any person who receives more than $10,000 in cash (in one transaction, or in two or more related transactions) in the course of a trade or business must report that information to the Internal Revenue Service.

3

Notification Letter would only be sent in instances where a target was arrested and indicted for "pure" Title 18 or 31 violations (see footnote 2). Any information collected in the course of a "pure" Title 18 or 31 money laundering investigation of the target does not relate to the "determination of the existence, or possible existence of liability" or the amount of liability of that target under Title 26. As such, the information relating to the target that CI proposes to include in the Notification Letter (i.e., amount of laundered payments and the source of the proceeds (target's name and address on check or money order)) is not protected by I.R.C. § 6103. Thus, I.R.C. § 6103 presents no impediment to the inclusion of the target-related information in the notification letters sent to the American businesses.

However, the target-related information that CI proposes to include in the Notification Letter is the target's Privacy Act protected information. The Privacy Act prohibits Federal agencies from disclosing information about individuals contained in an agency's systems of records without the consent of the individual involved unless the disclosure is made pursuant to one or more of the exceptions set forth in 5 U.S.C. § 552a(b)(1)-(12). "Record" is defined at 5 U.S.C. § 552a(a)(4) to mean any item, collection, or grouping of information maintained about an individual by an agency that includes the individual's name or other "identifying particular" (e.g., social security number, voiceprint, fingerprint, photograph). "System of records" is defined at 5 U.S.C. § 552a(a)(5) to be a group of records under the control of any agency from which information is retrieved by the name of the individual or by the "identifying particular."

In the circumstances presented here, CI will be disclosing information (i.e., amount of laundered payments and the source of the proceeds (target's name and address on check or money order)) obtained from the Criminal Investigation Management Information System (CIMIS) and/or Treasury Enforcement Communications System (TECS) to American businesses that received laundered narcotics proceeds from targets who have been indicted and arrested. CIMIS is a database contained within the IRS system of records 46.002. It is a database that maintains records of all criminal investigations initiated by the Service since October 1, 1987, from which information is retrieved by the name or some other identifying particular assigned to the individual. TECS is a database contained within the IRS system of records 46.022. It is a database that maintains records of all open and closed criminal investigations and subjects of potential criminal investigations, from which information is retrieved by the name or some other identifying particular assigned to the individual. Thus, absent consent of the individual to whom the record pertains, any disclosure by the Service of information obtained from CIMIS and/or TECS must fall within one or more of the statutory exceptions set forth in 5 U.S.C. § 552a(b)(1)-(12).

None of the twelve exceptions listed in 5 U.S.C. § 552a(b) authorizes the Service to disclose the identifying information to the American businesses.[4]  However, the Service has taken the position that the revelation of information sourced in the public record is not a "disclosure" that triggers the Privacy Act's restrictions.  Thus, the IRS may disclose the otherwise Privacy Act protected information, without running afoul of the Privacy Act, <u>if that information is contained in the public record</u>.  A number of courts have endorsed the position that information that is made part of the public record may be disclosed without regard to the Privacy Act.  See <u>FDIC v. Dye</u>, 642 F.2d at 836; <u>Lee v. Department</u>, No. 91-2175, slip op. at 4 (4th Cir. June 3, 1992); <u>Smith v. Continental Assurance Co.</u>, No. 91-C-0963, 1991 WL 164348, at *5 (N.D. Ill. Aug. 22, 1991); <u>Friedlander v. United States Postal Serv.</u>, No. 84-0773, slip op. at 8 (D.D.C. Oct. 16, 1984); <u>King v. Califano</u> 471 F. Supp. 180 (D.D.C. 1979).  Some courts, however, have rejected the public record argument, holding that absent the consent of the individual to whom the record pertains or an express statutory exception, disclosure of Privacy Act protected information that is a matter of public record is prohibited.  See <u>Quinn v. Stone</u>, 978 F.2d 126 (3rd Cir. 1992) (holding that release of information that is "merely readily accessible" to public "is a disclosure under 552a(b)"); <u>Gowan v. United States Dep't of the Air Force</u>, 148 F.3d 1182, 1193 (10th Cir. 1998) ("adopt[ing] the Third Circuit's reasoning [in <u>Quinn</u>] and hold[ing] that an agency may not defend a release of Privacy Act information simply by stating that the information is a matter of public record"); <u>Pilon v. United States Dep't of Justice</u>, 796 F. Supp. 7, 11-12 (D.D.C. 1992) (rejecting argument that information was already public and therefore could not violate Privacy Act where agency had republished statement that was previously publicly disavowed as false by agency); <u>United States Department of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S 749, 762-71 (1989), (a privacy interest can exist, under the FOIA, in publicly available--but "practically obscure"--information, such as a criminal history record.)  Notwithstanding this split of authority, consistent with the Service's public record position with regard to tax returns and return information, the Service may disclose information related to the target in the Notification letter if such information is contained in, and directly attributed to, the public record of the money laundering proceeding (<u>i.e.</u>, all of the information pertaining to the target in the Notification Letter, the amount of laundered payments, the source of the proceeds, and the target's name and address on the check or money order, is contained in the police report or the arrest record of the target that is filed with the court).[5]

---

[4] The systems of record notice for Treasury/IRS 46.002 and Treasury/IRS 46.022 have no routine use that would authorize the disclosure of the information to American businesses that received laundered proceeds.

[5] Although a copy of such police report or arrest record may be contained in the Special Agent's administrative file associated with the case, a separate copy from the court should be obtained for purposes of including the information in the letter.

5

### Notification Letter

The Notification Letter itself, however, is the recipient's section 6103 protected information. Section 6103(a) prohibits Service employees from disclosing "returns" or "return information" as those terms are defined in I.R.C. § 6103(b)(1) and (b)(2), unless disclosure is authorized under a specific provision of Title 26. Section 6103(b)(2) defines return information to include, among other things, any data which is received by, recorded by, prepared by, furnished to, or collected by the IRS with respect to a return or with respect to the determination of the existence or possible existence of liability or the amount of liability of any person under Title 26.

Here, the Notification Letters are prepared by employees of the Service and are predicated on the American businesses' obligation under I.R.C. § 6050I to report any transactions in which the business receives more than $10,000 in cash in the course of a trade or business, to the Internal Revenue Service. Section 6050I(f) provides that structuring transactions to evade reporting requirements is prohibited. Further, 18 U.S.C. § 1956(a)(1)(B)(ii), provides that "whoever, knowing that property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity to avoid a transaction reporting requirement under State or Federal law shall be sentenced . . .." The transaction reporting requirement here would be in the Internal Revenue Code i.e., in section 6050I, which would make this violation clearly tax related. As such, the Notification Letters constitute the return information of the recipients under I.R.C. § 6103(b)(2).

Under CI's proposal, CI will only be sending the Notification Letters to the taxpayers; i.e., the American businesses, to whom the tax return information relates. I.R.C. § 6103(e)(7) provides for the disclosure of a taxpayer's own return information to the taxpayer if such disclosure would not seriously impair Federal tax administration. Thus, absent any impairment call, disclosure of a taxpayer's own return information by the Service is authorized under section 6103(e)(7).

### Proposed Database

Subsequent to the mailing of the Notification Letters, the District proposes to keep a centralized file of a copy of those letters to serve as a foundation for any future criminal action against the American businesses. The new database would be indexed by business name; an entry would also be input into TECS which would state that the particular business had been identified as a past recipient of laundered narco-dollars and that a formal notification letter was issued. In this way, Special Agents will be able

to query the database in subsequent investigations to determine whether a business was issued a notification letter.

It is our understanding that the purpose of sending the Notification Letters is to place the American businesses on notice of receipt of laundered proceeds in order to prove <u>mens rea</u> in any subsequent criminal action related to their obligation under I.R.C. § 6050I to report any transactions in which a company receives more than $10,000 in cash in the course of a trade or business, to the Internal Revenue Service. As discussed above, the information contained in the proposed Notification Letter database relates to the determination of the existence or possible existence of liability or the amount of liability of the American businesses under Title 26. Having concluded that the letters constitute their return information, section 6103(h)(1) applies, which provides that returns and return information may be disclosed to officers and employees of the Department of the Treasury whose official tax administration duties so require. As such, the proposed database is protected by I.R.C. § 6103[6] and may only be queried by Treasury employees who have "a need to know" for tax administration purposes pursuant to section 6103(h)(1).[7]

The next question we must address is whether the proposed database triggers certain record keeping obligations imposed by the Privacy Act. Here, CI proposes to

---

[6] To the extent the notification letter recipients are sole proprietors, the database is Privacy Act controlled as well. The Privacy Act has virtually identical disclosure authority for intra-agency disclosures as does I.R.C. § 6103. Access to the database may be made by Treasury employees who have a need to know in the performance of their official duties in compliance with 5 U.S.C. § 552a(b)(1).

[7] The fact that the letters themselves are tax information and that any subsequent money laundering investigation would be per se tax related, may present issues if the subsequent investigation is conducted jointly. Treasury Reg. § 301.6103(h)(2)-1(a)(2)(ii) provides for the disclosure of tax information in a joint tax investigation if two requirements are met: (1) the non-tax matter involves or arises out of the particular facts and circumstances giving rise to the tax proceeding; and (2) the tax portion of the investigation must have been duly authorized by or on behalf of the Assistant Attorney General for the Tax Division of the Department of Justice pursuant to the request of the Secretary. Money laundering cases do not meet the second requirement as those charges are referred directly to the United States Attorney's office, bypassing Tax Division. CI may make a discrete disclosure of the section 6103 protected information <u>e.g.</u>, the names of the recipients of the Notification Letters, to other agencies pursuant to § 6103(k)(6) to the extent that such disclosure is necessary in obtaining information not otherwise reasonably available.

7

maintain a system of records from which information is retrieved by the name of the American businesses. In the case of a business that is a partnership, corporation, or an LLC, the Privacy Act is not implicated as that information is not maintained about an individual. If, however, the business is a sole proprietorship, the collection of information is Privacy Act protected as that record is under the control of the Service from which information is retrieved by the name or "identifying particular" of an <u>individual</u>. Thus, upon establishment of such a database, the Service is subject to 5 U.S.C. § 552a(e)(4), which requires publication of a notice in the Federal Register of the existence and character of any new, or significantly altered, system of records. The Office of 6103/Privacy Operations in the Office of the National Director, Governmental Liaison and Disclosure, should be contacted to ensure CI's compliance with this obligation. Alternatively, CI may wish to consider simply adding a field to TECS that would capture the fact, and date of mailing, of a notification letter being issued to a particular American business. In our view, such a minor change would probably not obligate the Service to publish a notice of the altered TECS system of records.

Please call 622-4580 if you have any further questions.

cc: Office of 6103/Privacy Operations